```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

CARLA ROTHSTEIN, et al.,             :

                    Plaintiffs,      :    09 Civ. 5888 (LTS)(HBP)

     -against-                       :    REPORT AND
                                          RECOMMENDATION
THE CITY OF NEW YORK,                :

                    Defendant.       :

----------------------------------X
```

PITMAN, United States Magistrate Judge:

TO THE HONORABLE LAURA TAYLOR SWAIN, United States District Judge,

I.  Introduction

This is a negligence action in which plaintiff Carla Rothstein ("Rothstein") alleges that she was injured when she fell at the southwest corner of West 38th Street and 9th Avenue in Manhattan.  She and her husband, plaintiff Philip Jan Rothstein, bring this action pursuant to the Court's diversity jurisdiction against the City of New York ("the City") for negligently failing to maintain the area adjacent to a catch basin located at this corner (Docket Items 1, 6).

Defendant moves for summary judgment dismissing the complaint pursuant to Federal Rule of Civil Procedure 56(c)

(Docket Item 22).  For the reasons set forth below, I respect-
fully recommend that defendant's motion be granted in all re-
spects.

II.  <u>Facts</u>

    A.  <u>Background</u>

      On November 20, 2008, Rothstein, a citizen of Connecti-
cut, was visiting New York (Supplemental Complaint, dated July
14, 2009 (Docket Item 6), ("Supp. Compl.") ¶ 1; Statement of
Undisputed Material Facts in Support of Defendant's Motion for
Summary Judgment, dated December 17, 2010 (Docket Item 25),
("Def.'s 56.1 Statement") ¶ 1; Deposition of Carla Rothstein,
dated February 9, 2010 and attached to Declaration in Support of
Defendant's Motion for Summary Judgment, dated December 17, 2010
(Docket Item 28), ("Neustein Decl.") as Ex. G ("Rothstein Dep.")
at 4:22-5:1).  At approximately 5:40 p.m., Rothstein stepped off
the southwest corner of 38th Street and 9th Avenue and fell in
the street[1] (Def.'s 56.1 Statement ¶¶ 2-3; Notice of Claim, dated

_____

    [1]Plaintiffs and defendant disagree as to whether the area on
which she fell should be considered a "catch basin" (Reply to
Defendant's Rule 56.1 Statement, dated January 31, 2011 (Docket
Item 36), ("Pl.'s 56.1 Reply") ¶ 4; Counterstatement of Facts to
Defendant's Rule 56.1 Statement, dated January 31, 2011 (Docket
Item 35), ("Pl.'s 56.1 Counter-statement") ¶ 1; Def.'s 56.1
                                      (continued...)

January 21, 2009 and attached to Neustein Decl. as Ex. A at 1).
Rothstein was taken by ambulance to the Bellevue Hospital Emergency Room where her leg was set in a hard cast (Def.'s 56.1
Statement ¶ 5; Rothstein Dep. at 14:11-16:8).  She remains under
a doctor's care for this injury, but has not had surgery (Def.'s
56.1 Statement ¶ 6; Rothstein Dep. at 27:1-3).

The Department of Environment Protection ("DEP"), which
maintains and repairs New York City's sewer systems, is responsible for catch basins located on public property (Def.'s 56.1
Statement ¶¶ 9-10; Deposition of Jason Seminara, dated April 1,
2010 and attached to Neustein Decl. as Ex. I, ("Seminara Dep.")
at 7:9-16).  DEP maintenance includes the repair of grading
issues between roadways and curbs, "dropped" curbs near storm
drains and catch basins, and "sink hole condition[s] in the catch
basin[s]."[2]  Generally, DEP repairs defects both on roadways and
near catch basins, and is responsible for filling in the asphalt
around these basins (Def.'s 56.1 Statement ¶ 10; Seminara Dep. at
30:5-16; Pl.'s 56.1 Counter-statement ¶ 2; Deposition of John

---

[1](...continued)
Statement ¶ 4; Defendant's Response to Plaintiffs' 56.1
Statement, dated February 14, 2011 (Docket Item 38), ("Def.'s
56.1 Response") ¶ 1).

[2]If a "curb lifted," the New York City Department of
Transportation ("DOT") would complete those repairs (Def.'s 56.1
Statement ¶ 10).

Caccavale, dated May 12, 2010 and attached to Neustein Decl. as Ex. J, ("Caccavale Dep.") at 21:18-23).  DEP workers are required to report any pothole or defect near a catch basin to the City or DEP (Def.'s 56.1 Statement ¶ 12; Seminara Dep. at 15:2-6).  DEP also generates customer service requests when it receives complaints by telephone, but has no other procedures for regular inspection of its catch basins (Def.'s 56.1 Statement ¶ 13; Seminara Dep. at 9:11-20; Pl.'s 56.1 Counter-statement ¶ 3; Caccavale Dep. at 9:13-18).

When DEP creates a service request, it conducts an inspection and prepares a work order if needed (Def.'s 56.1 Statement ¶ 14; Seminara Dep. at 13:2-9).  If a complaint refers to an intersection, DEP inspects all four corners of the named intersection.  When DEP inspectors encounter a sinkhole or depression, they determine if it needs repair based on "how far down the sunken area goes and if there is any opening near it or around the catch basin[,]" but there is no specific depth which mandates repair (Def.'s 56.1 Statement ¶¶ 15-16; Seminara Dep. at 28:2-29:17).  There are also no DEP regulations concerning the

proper distance between the top of the curb and the catch basin[3] (Def.'s 56.1 Statement ¶ 21; Caccavale Dep. at 26:16-22).

There are several reasons that the asphalt around a catch basin can depress and form a hole.  Primarily, water leaking under the ground can wash away dirt creating a void so that the cement and black top collapse.  Rain can then wash out the subsurface (Def.'s 56.1 Statement ¶ 18; Caccavale Dep. at 22:12-23:4).  Other causes include water steadily running down a curb, eroding the asphalt and cement (Def.'s 56.1 Statement ¶ 19; Caccavale Dep. at 23:4-7), water "pond[ing]" over the area (Pl.'s 56.1 Counter-statement ¶ 7; Caccavale Dep. at 23:13-19; Def.'s 56.1 Response ¶ 7) and the combination of salt, water and different weather patterns of hot and cold, causing blacktop and cement to expand and contract (Def.'s 56.1 Statement ¶ 20; Caccavale Dep. at 23:8-12).

DEP searched for records concerning the location of Rothstein's injury and found that, prior to her fall, DEP had received four complaints regarding this intersection (Pl.'s 56.1 Counter-statement ¶ 5; Def.'s 56.1 Response ¶ 5; see DEP Records,

---

[3]However, defendant reports that DEP would repair a depression which was two inches below the surface of the roadway adjacent to the catch basin because a catch basin should be level with the roadway (Def.'s 56.1 Statement ¶ 17; Pl.'s 56.1 Counter-statement ¶ 13).

attached to Neustein Decl. as Ex. O-T).  Three noted a depression
in this area while one[4] reported a clogged catch basin which
required cleaning (Pl.'s 56.1 Counter-statement ¶ 6; Def.'s 56.1
Response ¶ 6; see DEP Records, attached to Neustein Decl. as Ex.
Q-S).  Specifically, on September 21, 2004, DEP received a
complaint that there was a "cave-in 3 ft by 3 ft down 2 ft" at
this corner.  DEP inspected the site on October 25, 2004, but did
not find such a condition (Pl.'s 56.1 Counter-statement ¶ 8;
Def.'s 56.1 Response ¶ 8; see DEP Records, attached to Neustein
Decl. as Ex. O).  Similarly, on February 4, 2005, DEP received a
complaint concerning a "cave-in, approximately 1 1/2 feet deep"
at this corner, but on March 1, 2005, an inspector found no
defect (Pl.'s 56.1 Counter-statement ¶ 9; Def.'s 56.1 Response
¶ 9; see DEP Records, attached to Neustein Decl. as Ex. P).
Again on November 21, 2007, DEP received a complaint of a "sink-
hole" near a catch basin or sewer grate at this corner, and
conducted a site inspection on December 11, 2007 (Pl.'s 56.1
Counter-statement ¶ 10; see DEP Records, attached to Neustein

---

[4]Defendant acknowledges one complaint of a clogged catch
basin in 2007, while plaintiffs claim there were three that year.
It appears from the record that there was one such complaint on
April 27, 2007 and two subsequent work orders prompted by that
complaint.

Decl. as Ex. T).  The complaint was again resolved by inspection when no such condition was found (Def.'s 56.1 Response ¶ 10).

DOT also searched for records concerning this location for the two-year period preceding November 20, 2008.  It found eight permits, one application, two corrective action reports, no notices of violations, five inspection reports and a Big Apple Map[5] with a legend explaining annotations on the map which represent certain defects[6] (Def.'s 56.1 Statement ¶ 8; <u>see</u> DOT Records, attached to Neustein Decl. as Ex. L-N).

B.  Plaintiffs' Claims
<u>and Defendant's Arguments</u>

On February 6, 2009, plaintiffs served a Notice of Claim on defendant, more than thirty days before filing their complaint, as required by statute (Supp. Compl. ¶¶ 7-8).  Plaintiffs claimed that on or about November 20, 2008, defendant owned, operated, maintained and controlled both the curb/corner and sewer drain/grate of West 38th Street and 9th Avenue (Supp. Compl. ¶¶ 9-16).  They further claimed that Rothstein was seri-

_____

[5]The Big Apple Map is a private survey of New York City's sidewalks and curbs.  It is designed to provide a means to give written notice to the City of defects so that injured people can sue.  <u>Kansas v. Empire City Subway Co.</u>, 692 F. Supp. 2d 316, 318 n.2 (S.D.N.Y. 2010) (Batts, D.J.), <u>citing</u> nytla.org.

[6]Defendant produced additional DOT records after filing its motion, which are discussed in Section III.C.3.

ously injured when she fell at this location and that defendant had prior notice of the defective condition that caused her injury (Supp. Compl. ¶¶ 19-22).  They asserted that defendant caused these injuries due to its negligent, reckless and careless conduct in failing to properly maintain the curb/corner and sewer drain/grate, improperly maintaining the area, failing to make proper inspections, failing to have proper warning signs, causing and permitting a dangerous condition, failing to provide a safe place to traverse over this area, allowing the area to become dangerous, hazardous, defective, slippery, and uneven, knowing of the defective condition and failing to repair it, causing and permitting a tripping hazard, creating a trap, maintaining a nuisance and "generally being negligent, reckless, and careless in the ownership, operation, management, maintenance and control of the aforesaid area" (Supp. Compl. ¶ 23).  They further alleged that this conduct caused Rothstein to suffer damages to her person and to spend monies for her medical care (Supp. Compl. ¶ 26).

Plaintiff Philip Jan Rothstein claimed that because of defendant's conduct and Rothstein's injuries, he was "deprived of the services, consortium and companionship" of his wife[7] (Supp.

---

[7]The Supplemental Complaint actually states that Philip Jan
(continued...)

Compl. ¶ 29).   Rothstein has demanded $1,000,000 while her

husband has demanded $250,000 in damages (Supp. Compl. at 5).

Defendant argues that it is entitled to summary judg-

ment for several reasons.  First, it contends that it is not

liable for plaintiffs' injuries because it did not have prior

written notice of the defect pursuant to Section 7-201 of the

Administrative Code of the City of New York ("Section 7-201")

(Defendant's Memorandum of Law in Support of Motion to Dismiss,

dated December 20, 2010 (Docket Item 26), ("Def.'s Mem. in

Supp.") at 1-9).  Second, it argues that plaintiffs cannot now

assert that their claim fits into an exception to the notice

rules, namely that defendant "cause[d] and create[d]" the defect

or made special use of the property, because they did not assert

as much in their Notice of Claim (Def.'s Mem. in Supp. at 9-10).

Finally, defendant argues that even if plaintiffs could assert

that their claim fits into an exception to the notice rules, such

an assertion would be meritless (Def.'s Mem. in Supp. at 10-14).

---

[7](...continued)
Rothstein "was deprived of the services, consortium and
companionship of her husband, plaintiff, CARLA ROTHSTEIN" (Supp.
Compl. ¶ 29).  I will assume plaintiffs intended to refer to
Carla Rothstein as Philip Jan Rothstein's wife.

III.  <u>Analysis</u>

A.  <u>Summary Judgment Standard</u>

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  This form of relief is appropriate when, after discovery, the party -- here plaintiff -- against whom summary judgment is sought, has not shown that evidence of an essential element of her case -- one on which she has the burden of proof -- exists.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact.  An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment.  <u>See</u> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).  Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial."  <u>Aslanidis v. United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993).  If the nonmovant fails to meet this burden, summary judgment will be granted against it.  <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004); accord Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223-24 (2d Cir. 1994).

"Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists . . . . In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . .

Stated more succinctly, '[t]he evidence of the non-movant is to be believed.'" Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253-54 (2d Cir. 2002) (citations omitted); see also Jeffreys v. City of New York, supra, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."), quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); accord Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Vann v. City of New York, 72 F.3d 1040, 1048 (2d Cir. 1995). "A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996).

The Court of Appeals for the Second Circuit has explained that "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial,

the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion." <u>Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004); <u>see also Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003).

Finally, even when a summary judgment motion is unopposed, the Court must examine the record to determine whether a genuine issue of fact exists for trial; a summary judgment motion cannot be granted on default.  <u>Vt. Teddy Bear Co. v. 1-800 Beargram Co.</u>, <u>supra</u>, 373 F.3d at 244.

B.  Prior Written Notice

New York State law[8], as construed by the New York Court of Appeals, binds the Court in a diversity action.  Mendelsohn v. City of New York, 01 Civ. 5932 (GEL), 2003 WL 22510392 at *2 (S.D.N.Y. Nov. 5, 2003) (Lynch, D.J.), citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) and West v. Am. Tel. & Tel. Co., 311 U.S. 223, 236-37 (1940).  The New York City administrative code "unequivocally requires that plaintiffs who sue the City for personal injuries allegedly caused by defects or hazardous conditions in municipal streets and sidewalks plead and prove that the City received prior written notice of those

---

[8]"Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs."  Rocchigiani v. World Boxing Council, Inc., 131 F. Supp. 2d 527, 530 n.5 (S.D.N.Y. 2001) (Owen, D.J.), citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); see also Erie R.R. v. Tompkins, 304 U.S. 64, 74-77 (1938).  Both parties rely on New York law and do not claim that the law of any other forum applies; "such 'implied consent . . . is sufficient to establish choice of law.'" Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004), quoting Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000); accord Teitelbaum v. Lay Siok Lin, No. 10-3510-cv, 2011 WL 2163999 at *1 (2d Cir. June 3, 2011).  See generally Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the choice of [New York law], all are deemed to have consented to its application. No reason of policy warrants a departure from their implied choice-of-law.  In practice, litigants often ignore conflicts rules, opting instead to apply the law of the forum for reasons of familiarity, expediency or ignorance.") (internal citations omitted).

defects or conditions." Mendelsohn v. City of New York, supra,
2003 WL 22510392 at *2, citing N.Y. City Admin. Code § 7-201-
(c)(2); Woodson v. City of New York, 93 N.Y.2d 936, 937, 715
N.E.2d 96, 97, 693 N.Y.S.2d 69, 70 (1999); Katz v. City of New
York, 87 N.Y.2d 241, 243, 661 N.E.2d 1374, 1376, 638 N.Y.S.2d
593, 595 (1995).  Specifically, New York City is governed by
Section 7-201(c)(2), which states:

> No civil action shall be maintained against the city
> for damage to property or injury to person or death
> sustained in consequence of any street, highway, bri-
> dge, wharf, culvert, sidewalk or crosswalk, or any part
> or portion of any of the foregoing including any encum-
> brances thereon or attachments thereto, being out of
> repair, unsafe, dangerous or obstructed, unless it
> appears that written notice of the defective, unsafe,
> dangerous or obstructed condition, was actually given
> to the commissioner of transportation or any person or
> department authorized by the commissioner to receive
> such notice, or where there was previous injury to
> person or property as a result of the existence of the
> defective, unsafe, dangerous or obstructed condition,
> and written notice thereof was given to a city agency,
> or there was written acknowledgement [sic] from the
> city of the defective, unsafe, dangerous or obstructed
> condition, and there was a failure or neglect within
> fifteen days after the receipt of such notice to repair
> or remove the defect, danger or obstruction complained
> of, or the place otherwise made reasonably safe.

"The purpose of the prior notice provision is to limit
the City's liability to those defects or hazardous conditions of
which its officials have notice." Marceca v. City of New York, 5
Misc.3d 936, 940, 787 N.Y.S.2d 640, 643 (Sup. Ct. Kings Co.
2004), citing Poirier v. City of Schenectady, 85 N.Y.2d 310, 314,

648 N.E.2d 1318, 1320, 624 N.Y.S.2d 555, 557 (1995).  "[P]rior
written notice provisions are to be strictly construed."  Marceca
v. City of New York, supra, 5 Misc.3d at 940, 787 N.Y.S.2d at
643, citing Katz v. City of New York, supra, 87 N.Y.2d at 243,
661 N.E.2d at 1376, 638 N.Y.S.2d at 595.

       "[A]s a matter of law, neither constructive notice nor
written notice of defects near the accident site suffices to
fulfill the notice requirement."  Mendelsohn v. City of New York,
supra, 2003 WL 22510392 at *3, citing Amabile v. City of Buffalo,
93 N.Y.2d 471, 475-76, 715 N.E.2d 104, 106-07, 693 N.Y.S.2d 77,
80 (1999) (constructive notice insufficient as a matter of law);
D'Onofrio v. City of New York, 11 N.Y.3d 581, 585, 901 N.E.2d
744, 746, 873 N.Y.S.2d 251, 253 (2008) (because the defect shown
in the Big Apple map differed from the defect that caused plain-
tiff's injury, it could not provide prior written notice); Brill
v. City of New York, 305 A.D.2d 525, 526, 759 N.Y.S.2d 346, 346
(2d Dep't 2003), rev'd on other grounds ("'Big Apple' map indi-
cating defects in the sidewalk adjacent to the area of the
accident" insufficient as a matter of law); Belmonte v. Metropol-
itan Life Ins. Co., 304 A.D.2d 471, 473-74, 759 N.Y.S.2d 38, 40-
41 (1st Dep't 2003) (notice of a defect parallel to a curb cannot
provide proper notice of a defect which is perpendicular to a
curb); Fraser v. City of New York, 226 A.D.2d 424, 424, 640

N.Y.S.2d 607, 607-08 (2d Dep't 1996) (repair order indicating holes in a 400-foot-long stretch of roadway insufficient as a matter of law to provide notice of a specific defect).  Moreover, "a verbal complaint written down as a telephone message . . . does not satisfy the prior written notice requirement." Cenname v. Town of Smithtown, 303 A.D.2d 351, 351-52, 755 N.Y.S.2d 651, 651 (2d Dep't 2003), citing Anderson v. Town of Smithtown, 292 A.D.2d 406, 406-07, 738 N.Y.S.2d 860, 860 (2d Dep't 2002); Spanos v. Town of Clarkson, 81 A.D.3d 711, 713, 916 N.Y.S.2d 181, 183 (2d Dep't 2011); Sparrock v. City of New York, 242 A.D.2d 289, 289, 661 N.Y.S.2d 47, 47 (2d Dep't 1997) (intra-departmental work orders do not satisfy the notice requirement).

        "The fact that the Town may have inspected the sidewalk prior to the plaintiff's accident does not obviate the need for prior written notice." Cenname v. Town of Smithtown, supra, 303 A.D.2d at 352, 755 N.Y.S.2d at 651, citing Amabile v. City of Buffalo, supra, 93 N.Y.2d at 476, 715 N.E.2d at 107, 693 N.Y.S.2d at 80; Passaro v. City of Newburgh, 272 A.D.2d 385, 386, 707 N.Y.S.2d 224, 225 (2d Dep't 2000); Sommer v. Town of Hempstead, 271 A.D.2d 434, 434, 705 N.Y.S.2d 646, 647 (2d Dep't 2000). However, "a written statement showing that the city agency responsible for repairing a condition had first-hand knowledge both of the existence and the dangerous nature of the condition

is an 'acknowledgement' [sic] sufficient to satisfy the Pothole
Law." Bruni v. City of New York, 2 N.Y.3d 319, 325, 811 N.E.2d
19, 22, 778 N.Y.S.2d 757, 760 (2004).

"The only recognized exceptions to the notice require-
ment are (1) where a special use confers a special benefit upon
the municipality or; (2) [a]n act of affirmative negligence by
the municipality caused or created the defect." Williams v. City
of New York, 26 Misc.3d 1221(A), 907 N.Y.S.2d 105 (Table) (Sup.
Ct. New York Co. 2010), citing LoCurto v. City of New York, 2
A.D.3d 277, 277-78, 770 N.Y.S.2d 25, 26-27 (1st Dep't 2003).
When a plaintiff alleges that the municipality caused or created
the defect, the exception is "limited to work by the City that
immediately results in the existence of a dangerous condition."
Oboler v. City of New York, 8 N.Y.3d 888, 889, 864 N.E.2d 1270,
1271-72, 832 N.Y.S.2d 871, 872-73 (2007).

Local prior-notice laws, like Section 7-201, are
subject to the limits of New York General Municipal Law § 50-e(4)
("Section 50-e(4)").  Section 50-e(4) governs notices of claim in
actions concerning negligence or malfeasance of public officers
and prescribes, among other things, the form and contents of the
notice of claim, how it is to be served and the consequences of a
mistake, omission or irregularity.  It further provides that

> [n]o other or further notice, no other or further
> service, filing or delivery of the notice of claim, and
> no notice of intention to commence an action or special
> proceeding, shall be required as a condition to the
> commencement of an action or special proceeding for the
> enforcement of the claim; provided, however, that
> nothing herein contained shall be deemed to dispense
> with the requirement of notice of the defective, un-
> safe, dangerous or obstructed condition of any street,
> highway, bridge, culvert, sidewalk or crosswalk, or of
> the existence of snow or ice thereon, where such notice
> now is, or hereafter may be, required by law, as a
> condition precedent to liability for damages or inju-
> ries to person or property alleged to have been caused
> by such condition, and the failure or negligence to
> repair or remove the same after the receipt of such
> notice.

The New York Court of Appeals has held that "the Legislature's
enumeration of six, specific locations in the exception . . .
evinc[es] an intent to exclude any others not mentioned." Walker
v. Town of Hempstead, 84 N.Y.2d 360, 367, 643 N.E.2d 77, 79, 618
N.Y.S.2d 758, 760 (1994).

        C.  Application of
            the Foregoing
            Principles to the Present Case


        1.  The Nature of the Defect


        While plaintiffs never explicitly claim that the nature
of the defect in question is in dispute, I will address this
issue because the moving papers suggest that the nature of the
defect is disputed.  Specifically, plaintiffs claim that "discov-

ery revealed the defect in question to be a catch basin[,]" a defect they claim does not require prior written notice (Memorandum of Law in Opposition to Defendant Summary Judgment Motion, dated January 31, 2011 (Docket Item 34), ("Pl.'s Mem. in Opp.") at 1).  Defendant claims "it is inaccurate to state that the defect is of the catch basin itself.  Rather the alleged defect is of the pavement surrounding the catch-basin" (Defendant's Memorandum of Law in Further Support of Motion to Dismiss, dated February 14, 2011 (Docket Item 37), ("Def.'s Mem. in Further Supp.") at 3).

Plaintiffs' contention that the defect in question is strictly a part of the catch basin and not the surrounding street is disingenuous in light of all of plaintiffs' statements in their submissions.  First, in plaintiffs' Notice of Claim, they complained of the "Negligence, Carelessness and Recklessness of the City of New York in the ownership, operation and maintenance of a public street/sidewalk/catch basin" (Notice of Claim at 1). The parties used this same language in their Preliminary Pretrial Statement (Preliminary Pre-Trial Statement, dated October 5, 2009 (Docket Item 12), at 1-2).

Moreover, in plaintiffs' Counterstatement of Undisputed Material Facts, they claim that "[t]he defect in question is identified as a catch basin" (Pl.'s 56.1 Counter-statement at 1).

However, in support of that claim they cite to portions of the deposition of John Caccavale, Supervisor of Water and Sewer Systems for DEP, in which he discussed a complaint about "a sinkhole in [the] street at this location near a catch basin or sewer grate" (Caccavale Dep. at 14:11-16).[9]  They also note in support that Caccavale identified a catch basin in a photograph, but defendant is correct to note that he was not identifying the defect in question, but merely the existence of a catch basin in the photograph (Def.'s Mem. in Further Supp. at 2; Caccavale Dep. at 15:4-10).

In their Motion in Opposition, plaintiffs also cite to Rothstein's identification of the defect by way of photographs at her deposition (Pl.'s Mem. in Opp. at 3).  However, these photographs reveal that Rothstein marked the area of the street next to the catch basin as the location of her injury (Defendant's Exhibit C at Rothstein Deposition, attached to Neustein Decl. as Ex. K).  When asked if she knew what caused her to stumble, she testified that she fell in a hole "right by the grate where the cracks are" (Rothstein Dep. at 13:9-14).

---

[9]Plaintiffs also cite to "Plaintiff's Exhibit A" in support but did not specify the document to which this exhibit was attached and I have not been able to locate it in the record.

Plaintiffs also claim that three of the complaints to DEP "describe the defect in question."  However, one of these complaints reported a "sinkhole in [the] street at this location" (Pl.'s Mem. in Opp. at 5).  Similarly, in their Sur-Reply plaintiffs claim that a DOT 311 call which resulted in an order to repave 9th Avenue between 37th and 38th Street dealt with the "subject area[,]" though it clearly implicates the street around the basin (Plaintiffs' Sur-reply in Further Opposition to Defendant's Summary Judgment Motion, dated May 5, 2011 (Docket Item 44), ("Pl.'s Sur-reply") ¶ 4; Service Request, dated November 5, 2008 and attached to Pl.'s Sur-reply as Ex. C).

These inconsistencies in plaintiffs' own submissions suggest that there is not truly a dispute as to the nature of the alleged defect that caused Rothstein's injuries, and the defect in issue is a defect in the surface of the street surrounding the catch basin.  Regardless, such a dispute would not be material because it would not affect whether prior written notice was required.

    2.   The Necessity of
           <u>Prior Written Notice</u>

Defendant and plaintiffs disagree as to whether written notice is required for the defect in question.  Specifically,

plaintiffs claim that because Rothstein's injury was caused by a defect in the catch basin, they need not abide by the prior written notice requirement of Section 7-201 because the defect is not in a "street, highway, bridge, culvert, sidewalk or cross-walk" as enumerated in Section 50-e(4).  See Walker v. Town of Hempstead, supra, 84 N.Y.2d at 366, 643 N.E.2d at 79, 618 N.Y.S.-2d at 760.  They argue that Section 7-201's mandate of prior written notice for defects in "any encumbrances thereon or attachments" to these locations is invalid (Pl.'s Mem. in Opp. at 3).  Moreover, they claim that even if Section 7-201's require-ment of written notice for defects in encumbrances or attachments were permissible, catch basins cannot be considered encumbrances or attachments to any of the locations listed in Section 50-e(4) (Pl.'s Mem. in Opp. at 3).

Defendant, however, claims not only that the defect in question was in the street near the catch basin (Def.'s Mem. in Further Supp. at 3), but also that even if the defect was part of the catch basin itself, Section 7-201 has been applied to various "appurtenances and encumbrances which are affixed to or placed on sidewalks, streets and roadways" despite the limitations in Section 50-e(4) (Def.'s Mem. in Further Supp. at 1-2).

Plaintiffs' reliance on Walker is somewhat misplaced. First, the Walker court explicitly noted that it was addressing

23

the relationship between state and town, not city, laws.  Walker
v. Town of Hempstead, supra, 84 N.Y.2d at 365, 643 N.E.2d at 78,
618 N.Y.S.2d at 759.  Secondly, the local statute in that case
was much more expansive[10] than Section 50-e(4).  Walker v. Town
of Hempstead, supra, 84 N.Y.2d at 365 n.1, 643 N.E.2d at 78 n.1,
618 N.Y.S.2d at 759 n.1.  Finally, Walker involved a defect on a
wholly separate municipal paddleball court, not something which
was attached to or a part of a location listed in Section 50-
e(4).  Walker v. Town of Hempstead, supra, 84 N.Y.2d at 364, 643
N.E.2d at 78, 618 N.Y.S.2d at 759.

　　　　Moreover, cases involving cities have often applied the
prior written notice requirement to apparatuses which are a part
of the listed locations of Section 50-e(4).  In Woodson v. City
of New York, supra, 93 N.Y.2d at 937, 715 N.E.2d at 97, 693
N.Y.S.2d at 70, for example, the court found that a defect in a
concrete stairway required prior written notice because "[t]he
City's Administrative Code reasonably recognizes that when stairs
are integrated with, or serve as a part of, a connected standard
sidewalk, they plainly fall within the meaning of that already

---

　　　　[10]The applicable local law in Walker, Town of Hempstead Code
§ 6-2, required notice for any defective "parking field, beach
area, swimming or wading pool or pool equipment, playground or
playground equipment, skating rink or park property."  See Walker
v. Town of Hempstead, supra, 84 N.Y.2d at 365 n.1, 643 N.E.2d at
78 n.1, 618 N.Y.S.2d at 759 n.1.

existing category."  The court in Woodson noted that this was
"simply not a Walker situation because a paddleball court is
functionally different from each of the six locations enumerated
in [Section 50-e(4) while t]he stairway in this case functionally
fulfills the same purpose" as a sidewalk.  Woodson v. City of New
York, supra, 93 N.Y.2d at 938, 715 N.E.2d at 97, 693 N.Y.S.2d at
70.  Notably, in Crespo v. City of Kingston, supra, 80 A.D.3d at
1124, 917 N.Y.S.2d at 337, the plaintiff "was injured when she
fell as she stepped from the sidewalk onto a storm drain that was
lower than the surface of the roadway."  The court granted
summary judgment because a local rule mandated prior written
notice and defendant had "received no prior written notice of the
allegedly defective condition of the catch basin."  Crespo v.
City of Kingston, supra, 80 A.D.3d at 1124, 917 N.Y.S.2d at 337.
Similarly, in Bruni v. City of New York, supra, 2 N.Y.3d at 323,
811 N.E.2d at 21, 778 N.Y.S.2d at 759, plaintiff was injured when
he stepped into a hole adjacent to a catch basin.  The court
applied the written notice requirement to this defect as well.
Bruni v. City of New York, supra, 2 N.Y.3d at 324-25, 811 N.E.2d
at 21-24, 778 N.Y.S.2d at 759-62.  As noted by defendant, New
York courts have often found local notice requirements to apply
in similar circumstances.  See e.g. Filaski-Fitzgerald v. Town of
Huntington, 18 A.D.3d 603, 603-04, 795 N.Y.S.2d 614, 614-15 (2d

Dep't 2005) (applying local prior written notice requirement to
defects in drainage grate); <u>Abreu v. City of New York</u>, 14 A.D.3d
469, 469-70, 788 N.Y.S.2d 150, 151 (2d Dep't 2005) (applying
prior written notice requirement when plaintiff fell into a catch
basin); <u>Adams v. City of Poughkeepsie</u>, 296 A.D.2d 468, 468-69,
745 N.Y.S.2d 203, 204 (2d Dep't 2002) (applying local prior
notice requirement when plaintiff fell in a depression next to a
storm drainage grate and catch basin); <u>Solone v. City of New
York</u>, 238 A.D.2d 332, 332, 656 N.Y.S.2d 915, 915 (2d Dep't 1997)
(applying Section 7-201 to defect in drainage hole on side of
highway[11]).

        In the face of numerous decisions which have applied
Section 7-201 and similar local notice requirements to defects
which are a part of a location enumerated in General Municipal
Law Section 50-e(4), <u>Walker</u> does not seem instructive.  Indeed,
these cases do not note any inconsistency between the relevant
local notice requirements and Section 50-e(4) when they are

---

        [11]The court in <u>Solone</u> relied on New York's Vehicle and
Traffic Law to determine that a drainage hole on the side of a
highway was included in the definition of a highway.  Notably,
both "highway" and "street" are defined as "[t]he entire width
between the boundary lines of every way publicly maintained when
any part thereof is open to the use of the public for purposes of
vehicular travel," N.Y. Vehicle & Traffic L. §§ 118, 148,
indicating that a catch basin on the side of a street could
similarly be considered a part of that street.

applied to appurtenances to the six listed locations, implying that the application of these laws to such defects is not prohibited by <u>Walker</u>.  Moreover, plaintiffs have not pointed to, nor has my independent research disclosed, any cases in which Section 50-e(4) has precluded the application of Section 7-201 or any other local statute to defects in and around catch basins or similar appurtenances, or where notice requirements for catch basins have been distinguished from those concerning streets.[12] Therefore, I conclude that the prior written notice requirement applies to the defect in this case, regardless of whether it was on the street near the catch basin or in the catch basin itself. Any dispute as to the exact location of the defect is, therefore, immaterial.

---

[12]The court discussed the interconnection of streets and catch basins in <u>Bruni v. City of New York</u>, <u>supra</u>, 2 N.Y.3d at 322, 811 N.E.2d at 20, 778 N.Y.S.2d at 758, stating "[e]xpert testimony at trial explained how a defective catch basin could affect the street.  The grate covering a catch basin is held in place by a metal frame, which sits on bricks that make up the upper portion of the catch basin walls.  The brick walls are wider than the frame, and therefore the bricks also support a part of the adjacent pavement.  If bricks are removed or fall away, the pavement will be unsupported, and any weight placed on it will cause that portion of the street to cave in."

3.  Notice from DEP Records

DEP records revealed four complaints concerning the
location where Rothstein fell.  Three complaints, those of
September 21, 2004, February 4, 2005 and December 11, 2007,
describe a depression in that intersection.  These complaints
were resolved when inspectors viewed the location and found no
such defect.  In addition, a complaint on April 27, 2007 de-
scribed a clogged catch basin, which was resolved when DEP
workers cleaned that basin prior to Rothstein's injury.

Defendant maintains that these complaints do not equal
prior written notice of the defect in question because written
recordings of telephone complaints alone are merely hearsay and
cannot satisfy the written notice requirement (Def.'s Mem. in
Supp. at 6), citing Cenname v. Town of Smithtown, supra, 303
A.D.2d at 351-52, 755 N.Y.S.2d at 651.  Defendant relies on Bruni
v. City of New York, supra, 2 N.Y.3d at 325, 811 N.E.2d at 22,
778 N.Y.S.2d at 760, which states that prior written notice
exists when the agency responsible for repair of a particular
defect prepares a written report, based on firsthand knowledge,
noting the existence and dangerous nature of the defect (Def.'s
Mem. in Supp. at 6).  Defendant contends that no such report
exists in this case because these three complaints yielded

28

reports that there was no defect.  Moreover, defendant argues
that these complaints do not address the defect in question
because the September 21, 2004 and November 21, 2007 reports of a
depression do not state its exact location, while the February 4,
2005 complaint explicitly identified the northwest, not south-
west, corner as the location of the defect (Neustein Decl. ¶¶ 13-
14, 16).

Plaintiffs agree with defendant's reading of Bruni, but
argue that these complaints do constitute written acknowledgments
of the existence and dangerousness of the defect.  First, they
claim that the three complaints of a depression concern the
defect in question, and therefore constitute prior written notice
of its existence and dangerous nature.  They contend that Cenname
does not apply because there was more than one phone message and
the complaints in aggregate provided DEP with firsthand knowledge
of the existence and dangerousness of the condition (Pl.'s Mem.
in Opp. at 6-7).

In fact, these DEP complaints cannot constitute prior
written notice because courts have held that citizen telephone
complaints do not satisfy this requirement.  Cenname v. Town of
Smithtown, supra, 303 A.D.2d at 351-52, 755 N.Y.S.2d at 617;
Dwyer v. City of New York, No. 101522/08, 2010 WL 2044505 at *2,
27 Misc.3d 1226(A), 911 N.Y.S.2d 692 (Table) (Sup. Ct. Richmond

Co. Apr. 12, 2010).  There is no support for plaintiffs' conten-
tion that multiple complaints alter this rule.  Moreover, DEP's
reports following its inspections stated that no defect was
found.  Clearly, these reports did not acknowledge the existence
and dangerousness of any defect.

     In addition, plaintiffs claim that the complaint
regarding a clogged catch basin deals with a condition which "is
affirmed to create the exact defect which is the subject of
plaintiff's complaint" (Pl.'s Mem. in Opp. at 6).  To support
this assertion, they point to Caccavale's testimony that a
depression can be caused by "'steady running water down a curb
[eroding] the asphalt and cement" near a catch basin (Pl.'s Mem.
in Opp. at 6; Caccavale Dep. at 23:4-7) or a clogged catch basin
where water can "pond" (Pl.'s Mem. in Opp. at 6; Caccavale Dep.
at 23:13-19).  They further claim that Caccavale testified that
there are no DEP guidelines for what to look for during an
inspection,[13] nor are there guidelines regarding the proper
distance from the top of the curb to the top of a catch basin.
Plaintiffs also note that inspectors did not take pictures during
their review (Pl.'s Mem. in Opp. at 5; Caccavale Dep. at 20:3-6;
26:16-22; 12:16-17).  They also cite Caccavale's testimony that

_____

     [13]Caccavale actually testified that he did not know if such
guidelines existed (Caccavale Dep. at 20:3-6).

if a slight depression was found near a catch basin, DEP would not schedule a follow-up but would wait for an additional complaint before returning to the site (Pl.'s Mem. in Opp. at 5; Caccavale Dep. at 22:7-11).

Defendant, however, claims that the complaint of a clogged catch basin does not satisfy the notice requirement because the complaint did not disclose the alleged defect that caused Rothstein's fall (Def.'s Mem. in Supp. at 7).

Indeed, plaintiffs complain of a depressed or uneven catch basin, not a clogged one. As defendant points out, notice of a different defect in the same area as the defect in question does not satisfy the prior written notice requirement. See D'Onofrio v. City of New York, supra, 11 N.Y.3d at 585, 901 N.E.2d at 746-47, 873 N.Y.S.2d at 253-54; Belmonte v. Metropolitan Life Ins. Co., supra, 304 A.D.2d at 473-75, 759 N.Y.S.2d at 40-41. Plaintiffs have not cited any legal authority supporting their contention that the complaint and repair of a separate defect which has the potential to cause the defect in question can satisfy the prior written notice requirement, nor has my own independent research disclosed such authorities. Moreover, as noted by defendant, plaintiffs' claim that the clogging of the catch basin caused the defect in question is speculative (Def.'s Mem. in Further Supp. at 2-3). There are several possible causes

31

of such a depression, and it is unknown which actually created the alleged defect in this case.

Even if written notice of a clogged basin were sufficient, there was not even proper written notice of that defect. Courts have held that intra-departmental documents alone cannot satisfy this requirement, even if they result in a work order. In Lopez v. Gonzalez, 44 A.D.3d 1012, 1012-13, 845 N.Y.S.2d 91, 92-93 (2d Dep't 2007), for example, the court ruled that no prior written notice existed even though the City had received citizen complaints of the defect in question, issued repair orders and completed repairs. Lopez v. Gonzalez, supra, 44 A.D.3d at 1012-13, 845 N.Y.S.2d at 92-93, citing Akcelik v. Town of Islip, 38 A.D.3d 483, 484, 831 N.Y.S.2d 491, 492 (2d Dep't 2007); DeSilva v. City of New York, 15 A.D.3d 252, 253, 790 N.Y.S.2d 87, 88 (1st Dep't 2005); Dalton v. City of Saratoga Springs, 12 A.D.3d 899, 901, 784 N.Y.S.2d 702, 705 (3d Dep't 2004); Gee v. City of New York, 304 A.D.2d 615, 617, 758 N.Y.S.2d 157, 159 (2d Dep't 2003). Moreover, the court in Lopez noted that, as in the present case, "even if the City had been provided with written notice of those prior defects, the plaintiff failed to present any evidence that the City received prior written notice of the subject defect following the repair." Lopez v. Gonzalez, supra, 44 A.D.3d at 1013, 845 N.Y.S.2d at 93, citing Capobianco v. Mari, 272 A.D.2d

32

497, 497, 708 N.Y.S.2d 428, 428 (2d Dep't 2000) and Khemraj v. City of New York, 37 A.D.3d 419, 420, 829 N.Y.S.2d 621, 622 (2d Dep't 2007).

Finally, "[t]o the extent that the plaintiff[s] con-tend[] that the prior defects provided the City with actual and/or constructive notice of the subject defect, such notice does not obviate the statutory requirement of written notice." Lopez v. Gonzalez, supra, 44 A.D.3d at 1013, 845 N.Y.S.2d at 93, citing Amabile v. City of Buffalo, supra, 93 N.Y.2d at 475-76, 715 N.E.2d at 106-07, 693 N.Y.S.2d at 79-80; Granderson v. City of White Plains, 29 A.D.3d 739, 739-40, 815 N.Y.S.2d 246, 247-48 (2d Dep't 2006); Quinn v. City of New York, 305 A.D.2d 570, 572, 761 N.Y.S.2d 231, 234 (2d Dep't 2003); Ferris v. County of Suffolk, 174 A.D.2d 70, 74-77, 579 N.Y.S.2d 436, 439-42 (2d Dep't 1992); but see Blake v. City of Albany, 63 A.D.2d 1075, 1075-76, 405 N.Y.S.2d 832, 834 (3d Dep't 1978) (city defendant had prior notice because city employees had been inspecting the defective area daily).  Accordingly, I conclude that none of the DEP records constitute prior written notice of the existence and dangerousness of the defect which allegedly caused Rothstein's injury.

33

4.  Notice from DOT Records

Defendant stated in its moving papers that DOT searched for records concerning the corner of 38th Street and Ninth Avenue and found none which referenced the defect in question[14] (Def.'s Mem. in Supp. at 5).  However, it appears that defendant located and produced additional DOT records following the filing of its motion for summary judgment (Def.'s Mem. in Further Supp. at 5). This production included two permits issued to DOT, valid from July 11, 2007 to December 1, 2007, for the paving of West 38th Street and 9th Avenue (Def.'s Mem. in Further Supp. at 5; Paving Permits, attached to Reply Declaration in Support of Defendant's Motion for Summary Judgment, dated February 14, 2011 (Docket Item 39), ("Neustein Reply Decl.") as Ex. A at 5 and Ex. B at 23). Defendant claims that the issuance of permits for street paving "is not an acknowledgment of a dangerous condition nor is it prior written notice of the alleged defect of a depression" (Def.'s Mem. in Further Supp. at 5).  Defendant also claims that any 311 calls to DOT were "nonspecific to location and do not

_____

[14]Defendant also claims that the Big Apple Map served upon DOT by the Big Apple Pothole and Sidewalk Protection Corporation does not provide notice of this defect (Def.'s Mem. in Supp. at 5, 8).  Plaintiffs do not argue otherwise and I do not, therefore, address this issue.

concern the alleged defect of a depression" (Def.'s Mem. in

Further Supp. at 5).[15]

    The only[16] DOT record which plaintiffs specifically

cite as constituting notice is a November 5, 2008 311 call

requesting the re-paving of Ninth Avenue between 37th and 38th

Street (Pl.'s Sur-reply ¶ 4).  The Service Request states that

---

[15]Defendant further claims that no other DOT records
constitutes prior notice of the defect in question.
Specifically, defendant claims that a February 9, 2007 permit to
DEP for "water and sewer repair" (Def.'s Mem. in Further Supp. at
5; Street Opening Permit, dated February 9, 2007, attached to
Neustein Reply Decl. as Ex. A at 3) does not specify where in the
intersection the repairs were needed, and subsequent approval of
that repair does not constitute an acknowledgment of a dangerous
condition.  Defendant also notes that any condition that
did exist was repaired prior to Rothstein's injury (Def.'s Mem. in
Further Supp. at 5; DOT Records, attached to Neustein Reply Decl.
as Ex. A at 5, 10, 14 and Ex. B at 23, 25, 39).  Defendant
similarly claims that permits issued to Con Ed and other private
agencies, as well as 311 calls to DOT, did not specifically
identify any location of a defect, and did not address the repair
of a depression (Def.'s Mem. in Further Supp. at 5; Permits,
attached to Neustein Reply Decl. as Ex. B at 2-22).  Finally,
defendant notes that reports referencing pothole repair do not
specify the location of these repairs, all of which occurred
prior to Rothstein's injury (Def.'s Mem. in Further Supp. at 5-6;
Permits, attached to Neustein Reply Decl. as Ex. A at 10, 14 and
Ex. B at 35, 39).  Because plaintiff does not specifically claim
that any of these records constitutes prior written notice, I
shall not address these issues.  It should also be noted that,
because defendant has not cited to particular pages within its
exhibits, I have cited to those pages which I believe defendant
describes.

    [16]In their Sur-reply plaintiffs generally reference
"additional '311' complaints" and argue that they satisfy the
prior written notice requirement.  The only 311 call that
plaintiffs specifically address is the November 5, 2008 call
(Pl.'s Sur-reply ¶¶ 3-4).

the "caller is requesting a street repaving on a Manhattan
street" and notes that upon inspection DOT found "rough, pitted
or cracked roads" (Service Request at 1).  The "Resolution
Description" box reads: "[DOT] inspected the condition and made
the determination that the street meets resurfacing standards and
will be planned for either the next or future resurfacing seasons
(2-3 years).  [DOT] works with Community Boards and elected
officials to determine resurfacing priority" (Service Request at
1).  Plaintiffs claim that an approval for re-paving includes a
detailed survey, but they had not received any such documents
from defendant despite their request (Pl.'s Sur-reply ¶¶ 7-9).
Plaintiffs also note that Harold Rolley, a DOT inspector, testi-
fied upon seeing a picture of the catch basin in question "I do
think this is a little low" (Pl.'s Sur-reply ¶ 13; see Deposition
of Harold Rolley, dated April 6, 2011 and attached to Pl.'s Sur-
reply as Ex. B, ("Rolley Dep.") at 11:8-11; 12:2-11; 15:8-17:7;
21:9-15).

          Plaintiffs' argument that this complaint constituted
proper notice fails.  As previously stated, the telephone com-
plaint itself cannot constitute prior written notice even when
memorialized.  Cenname v. Town of Smithtown, supra, 303 A.D.2d at
351-52, 755 N.Y.S.2d at 651.  Likewise, Rolley's testimony well
after Rothstein's injury concerning the level of the catch basin

36

does not satisfy this requirement.[17]   Moreover, DOT's written

conclusion that the street had been approved for re-paving in the

next two or three years does not indicate a dangerous condition,

nor does it even specifically address the location of the defect

in question.  Even if the survey documents were available, it

would not change the fact that DOT concluded that any existing

defect was not so dangerous as to warrant repair in the immediate

future (Rolley Dep. at 11:6-25; 24:22-25:11).

> 5.   Exceptions to
>      the Prior Written
>      Notice Requirement

Because plaintiffs have not asserted that defendant

caused and created the alleged defect, nor that it made special

use of this location, I need not address defendant's argument

that plaintiffs are procedurally barred from making these claims,

and that they would otherwise lack merit.

IV.  Conclusion

Accordingly, for all the foregoing reasons, defendant's

motion for summary judgment should be granted in its entirety.

---

[17]It should also be noted that Rolley testified that DEP,
not his employer DOT, had the expertise to know whether the basin
was low (Rolley Dep. at 22:2-23:5).

V.   <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of this Report to file written objections.  <u>See also</u> Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain, United States District Judge, 500 Pearl Street, Room 755, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Swain.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054

(2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:   New York, New York
         June 15, 2011

                              Respectfully submitted,




                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Elina Lecour, Esq.
Galvano & Xanthakis PC
Suite 2100
150 Broadway
New York, New York 10038

Cathy Neustein, Esq.
New York City Law Department
350 Jay Street
Brooklyn, New York 11201